STATE, Respondent, vs. GARBE, Appellant.

*October 14—November 15, 1949.*

The cause was submitted for the appellant on the brief of *McGowan, Geffs, Geffs & Block* of Janesville, and for the respondent on the brief of the *Attorney General, William A. Platz,* assistant attorney general, and *Robert D. Daniel,* district attorney of Rock county.

BROWN, J. It is undisputed that Finley's dog was shot and killed in or near the public highway adjoining Finley's field after sundown but while it was still light. The questions involved and decisive here are whether or not the defendant was the person who shot it, and whether the dog was wearing a license tag. Since a violation of sec. 343.47, Stats., constitutes a crime, guilt must be established beyond a reasonable doubt.

Complainant testified that he went to his field in the early evening in an automobile to get a calf, and the dog accompanied him. While complainant was so engaged, the dog chased a squirrel or other animal across the road and up a tree. While the dog was barking Finley heard two shots, went as quickly as possible to the roadside, and saw a man walking away carrying a gun. The dog was dying. Finley testified that he was approximately ten rods away from this person, who had his back partly turned, but he was positive it was the defendant. He called but the man made no reply and walked away. Finley could see his face. The two parties had adjoining farms and had been friends and neighbors a long time. Finley also testified that the dog was licensed and that it was wearing its collar and tag at the time it was killed. He rolled the dog off the road and took the calf home, and the next day his son, Francis, got the dog and brought it home where the hired man or one of Finley's sons removed the collar from the dog and Finley removed the tag from the

collar. A license tag was received in evidence but, because of his poor eyesight, Finley could not identify it as the one which had been on the collar and it remained unidentified. Finley admitted inconsistencies between his testimony at the trial and upon the preliminary examination relative to such matters as to whether the dog ran beside the automobile or rode in it on the way to the field, and how the collar came to be taken from the dog and the tag from the collar.

Finley's son, Francis, thirty-seven years old, testified that he brought the body of the dog from the roadside to the home the morning after it was shot. He thought the dog had a collar on. The veterinarian, who made a post-mortem examination of the dog, testified that its wound was such that it could have moved only four or five feet after being shot and death came almost immediately.

Defendant denied that he shot the dog and denied that he was on the highway after sundown or that Finley had called to him. He testified that on the following morning a man named Jensen, who delivered bread, told him that a dead dog was lying in the road. He went to the place and examined the dog and threw it into the ditch to get it off the road. He looked particularly for a collar and license for identification but the dog had neither. His nephew, Archie Reid, who lived with him, accompanied him.

Archie Reid, eighteen years old, testified that he and the defendant were engaged in chores from approximately five o'clock to seven o'clock on September 7th. He saw the dead dog the next day in the road. He was not questioned concerning the collar and license. Donald Jensen testified that he delivered bread to Garbe on September 8th and told him about the dead dog. Later, on his way back from his deliveries, he saw Garbe and Reid walking up to the dog. He joined them and examined the dog with them. He was positive the dog had no collar. He recognized it as Finley's dog.

The defendant conceded that about seven o'clock that evening, when it was getting pretty dark, he heard a dog barking at his hog-lot fence. He and Archie Reid went out behind the machine shed where they could see the dog and defendant took two shots at it with his single-barrel shotgun. The dog yelped and ran away.

It is upon the foregoing evidence that we must decide whether or not defendant has been proved guilty beyond a reasonable doubt. We hold he has not. The only two people who know whether he was in the road where the dog was killed are the defendant and the complaining witness. Both, so far as the record shows, are completely reputable but their evidence is in irreconcilable conflict. Complainant is indefinite, uncertain, and self-contradictory on numerous details concerning the dog and the collar and license. Reid corroborates Garbe as to Garbe's alibi and Jensen corroborates him as to the absence of the collar and license. Sec. 174.10 (1), Stats., provides that "no action shall be maintained for an injury to or the destruction of a dog without a tag, unless it shall appear affirmatively that the dog is duly licensed and that a tag had been properly attached to the collar of the dog and had been lost or removed without the knowledge or consent of the owner" (with other provisions not material here). Since the state attempted to prove the collar and tag were worn at the time of shooting, and were still there the following day, we are not concerned with the possibility of the loss or removal without the owner's knowledge. On this point the state's evidence was equivocal and that of defendant and the nonpartisan Jensen was positive. Jensen, at least, was not impeached in any part of his testimony and, if findings of fact had been made, a finding that the dog wore a collar and license at the time it was shot would have been against the weight of the evidence. The prerequisite facts required by the portion of sec. 174.10 quoted, do not affirmatively appear and no civil or criminal action may be main-

tained for the dog's destruction. Nor do we think in view of Reid's corroboration of the defendant's alibi and the infirmities of Finley's evidence already referred to, that it has been established beyond reasonable doubt that Garbe shot Finley's dog. We find it unnecessary to consider defendant's other assignments of error.

*By the Court.*—Judgment reversed, and record remanded with directions to dismiss the information.